*Harper* and *Winder*, for the Defendants in error, relied on *M'Mechen vs. The Mayor, &c. of Baltimore*, 2 *Harr. & Johns.* 41.

The Court, on both bills of exceptions, concurred in the opinions given by the court below.

JUDGMENT AFFIRMED.

---

MAY.

SCHELL vs. THE STATE, use of SOWER.

A plea of the act of limitations is a bar to an action on a bond given to the state, by a trustee appointed under a decree of the court of chancery for the sale of the real estate of a deceased person, &c. where the bond was executed more than twelve years before the institution of the action. As where A Q was appointed a trustee, under a decree of the court of chancery, to sell the real estate of J S, deceased, and gave bond as such to the state, with J M and C S, his sureties, on the 20th of December 1795, and the action was brought on the bond against C S, one of the sureties, on the 4th of May 1809, who pleaded the act of limitations, to which there was a general demurrer The demurrer was overruled..

Where the replication to a plea of general performance in an action on a bond given by a trustee appointed under a decree of the court of chancery for the sale of the real estate of J S, sets out the decree, but does not make a profert of it, and stated that by the decree, which was in the usual form, the trustee was directed to bring into the court of chancery the money arising from any sale by him made, to be applied, under the chancellor's directions, to the purposes mentioned in the will of J S; that the trustee accepted the trust, gave bond, made the sale, took bonds, and received the money. The will of J S was set out, showing the share and interest of L S, (for whose use the suit was brought.) in the money arising from the sale. The breaches assigned were, that the trustee neglected to return an account of his proceedings, or the bonds, or the proportion of the money to which L S was entitled, to be applied, under the chancellor's direction, to the payment of the share of L S, as directed in the will. To this replication there was a general demurrer, which the county court overruled; but on appeal reversed

APPEAL from *Frederick* County Court. Debt brought on the 4th of May 1809, on a bond dated the 20th of December 1795, executed by *Allen Quynn*, Jr. together with *Isaac Mantz* and *Charles Schell*, (the defendant and now appellant,) as his sureties, conditioned, that if the said *Quynn* should well and faithfully perform the trust reposed in him by the chancellor, by decree dated the 8th of December 1795, appointing him trustee for selling the real estate of *John Sower*, deceased, or any further decree or order in the premises; then, &c. The defendant pleaded —1. That the thing in action, in virtue of the writing obligatory in the declaration mentioned, and the condition thereof, was above twelve years standing at the time of the impetration of the original writ in this cause. 2. That *Quynn* did not, within twelve years next before the impetration of the original writ, commit any breach of the trust reposed in him by virtue of the decree of the chancellor, mentioned in the condition of the bond, or by virtue of any other order or decree in the premises mentioned in the said decree; and that the thing in action in the said specialty mentioned, was above twelve years standing before the day of the impetration of the original writ. 3. General performance of the trust, &c. by *Quynn*. 4. General performance of the condition of the bond, &c.

To the *first* and *second* pleas the plaintiff demurred. To the *third* plea the plaintiff replied, setting out the decree, which, after appointing the trustee, directing the bond to

be given, terms and manner of sale, &c. as is usual in such cases, directs that the trustee shall bring into the court of chancery the money arising from any sale by him made, to be applied under the chancellor's directions, to the purposes mentioned in the last will and testament of *John Sower*. The decree also directs, that as soon as conveniently may be after any sale, the trustee shall return to the court of chancery a full and particular account of his proceedings. Also, that he shall return the bond or bonds by him taken from the purchaser or purchasers. And also, that nothing done under that decree shall be effectual, unless *Philip Sower*, son of the deceased, had attained the age of 15 years, (as mentioned in the will of the deceased.) The replication then states, that the trustee accepted the trust, gave the bond, &c. made the sale the 4th of April 1796, took the bonds of the purchaser, and that he received the money the 25th of October 1797. It sets out the will of the deceased, with averments showing the share and interest of *Jacob Sower*, (for whose use the suit is brought.) in the money arising from the sale; and that *Philip Sower*, mentioned in the will and decree, had attained the age of 15 years before the decree was passed. The breaches assigned were—1. That the trustee neglected and refused to return an account of his proceedings to the court of chancery. 2. That he did not return the bonds taken for the purchase money as aforesaid. And 3. That he did not return the proportion of the money to which *Jacob Sower* was entitled, to be applied, under the chancellor's directions, to the payment of the share of *Jacob Sower*, as directed in the will. To the *fourth* plea, the replication was in substance the same with the preceding. To the replications to the *third* and *fourth* pleas, the defendant demurred generally. The County Court gave judgment on the demurrers for the plaintiff. From that judgment the defendant appealed to this Court.

The cause was argued before CHASE, Ch. J. and NICHOLSON, EARLE, and JOHNSON, J.

*Brooke*, for the Appellant, contended, that the county court ought to have allowed the pleas of limitations; that the saving in the act of limitations, which relates to bonds given in the *name* or for the use of the *state*, is to be construed to mean only bonds which are given for the pay-

1815.

Schell
vs
The State

ment of *money*, either directly or indirectly, to the state, and that it never was intended to extend to bonds where the name of the state was used merely for the purpose of facilitating the remedy of a private person, and in the performance of the condition of which bond the state had no interest or concern either directly or indirectly. Another objection to the judgment below was, that the breach assigned was not within the words or meaning of the condition. The condition is, that the principal in the bond, (who is a trustee to sell real estate,) should perform the decree, or any future order or decree in the premises. The order or decree should be set out, and as it is a matter of record, *a profert in curia* should be made, and the breach assigned in the nonperformance of the decree or order. The replication is double, and it is argumentative, and contains matter which ought to be shown in evidence to the court, as necessary to authorise a suit on the trust bond for the use of *Sower*, to be so brought, and the writ to be so endorsed, but is improper matter to be alleged in the replication to show the interest of *Sower*, and that he had a right to bring the action in the name of the state for his use. It is contended that *Sower*, ought either to have procured a special order of the court of chancery for the payment of his share of the money arising from the sale, or that there should have been an order of the court of chancery directing the bond to be put in suit by the new *trustee*. In the first case the breach could have been assigned in the nonpayment of the money due *Sower*, according to the order of the chancellor; and in the latter case the nonpayment of the money to the new trustee, according to the order of the court in the premises. For any thing that appears in this record, *Sower* may not be entitled to any of the money arising from the sales, as it is to be disposed of by the order of the court of chancery.

*Tuney*, for the Appellee. In support of the demurrers to the pleas of limitations, it will only be remarked, that bonds "*taken in the name or for the use*" of the state, are expressly excepted in the act of 1715, *ch*, 23; so that this case is within the words and spirit of the excepting clause. It was found necessary, at a subsequent period, (1729, *ch*. 24, *s*. 21,) to pass a new act of limitations as to testamentary and administration bonds, they being given to the state. No authorities are cited in support of the objec-

tions to the replications. The trustee was appointed in this case under the act of 1785, *ch.* 72, *s.* 4. The action on the bond is given in the same act, *section* 8. It is believed that no rule of proceeding required the decree to be plead with a profert by the plaintiff, nor is any thing stated in the replications but what is necessary to show the interest of *Jacob Sower*, and his right to sustain the action on the bond, under the act of assembly. But as the case now stands, neither of these objections can avail the defendant, as the want of a profert, and duplicity in pleading, can be taken advantage of only on special ~~demand~~ *demurrer*. The demurrers to these replications are general. The different breaches are assigned in the replications according to the statute of *Wm.* III. *Gainsford vs. Griffith,* 1 *Saund.* 58, *(note* 1.) The act of assembly before cited, does not compel the party interested to pursue the course pointed out by the appellant's counsel. It gives his remedy for any breach of the condition directly on the bond. The breaches assigned are, by the demurrers, admitted to have been committed. By the law of 1785, *ch.* 72, *s.* 8, any party *interested* who is *aggrieved* by the trustee, is authorised to support his action on the bond, and to recover judgment for the damages actually sustained by him. It does not compel him to wait until the account of the trustee is liquidated, but gives him a right to sustain his action whenever he is aggrieved. The only questions then are, 1. Is he interested? 2. Is he aggrieved? His interest is distinctly set forth in the replications, and admitted by the demurrers; a certain portion of the money arising from the sale of the land is devised to him by the will of his father. The decree directs, that the money arising from the sale shall be brought into court, to be applied, under the chancellor's direction, to the purposes mentioned in the will. It does not appear that there were any debts to affect it; and in fact there were none. The party, therefore, for whose use the suit is brought, is clearly *interested*, and the trustee has broken the condition of his bond in that part in which he is interested, by not bringing the money into the court of chancery, to be applied to the payment of *Sower's* share, as the decree directed should be done. It is equally manifest that he is aggrieved by the misconduct of the trustee. He has been prevented from receiving his share of his father's estate. The money, rightfully due to him, has been

1815.

Sellell
vs
The State

withheld by the trustee, and retained in the trustee's own hands. This is surely an injury done to *Sower.* He is thereby aggrieved. He seems, therefore, to be completely within the description of persons to whom the law gives a right to sustain an action on the bond. He is a party interested, and he is a party aggrieved; whenever this is the case the law gives the remedy on the bond. The damages sustained are fixed by agreement, as appears by the record. The situation of this case shows the justice and necessity of giving the remedy now sought. It is a case that may often happen again. The trustee died many years ago. There was, it is believed, no administration on his estate. He left no property worth an administration. The trustee being dead, no order can be passed on him by the chancellor. There is no administrator to be made a party before the chancellor. The securities are not parties to the proceedings, and no order can be passed on them. No report of the sale has been made, as appears by the record, and in fact none was made. Who then could now be called on to report the sale, and settle the account? Not the trustee, for he is dead—not his administrator, for there is none—not the securities, for they are not parties to the trust—And if a new trustee were appointed, he could only settle his own account, and report his own proceedings. He would have nothing to settle, for the land is sold, and the money received by the former trustee; and there seems to be no one on whom the chancellor could call to report the proceedings of the former trustee, and settle his account, or on whom an order could be passed to pay over the money to a new trustee, to enable him to settle the trust. If an administration is necessary in order to liquidate the accounts of the trust, it would hardly be required, that the parties interested in the sale should administer on an insolvent estate, and incur the trouble, risk and expense, of the administration, for which they could receive no compensation. They never agreed to be responsible for the conduct of the trustee. The securities in the bond have undertaken that responsibility, and if an administration is necessary to protect them, they ought to encounter the burthen. The difficulty has arisen from the misconduct of the trustee in not reporting his proceeding, and settling the trust. If a new trustee has become necessary, that duty and expense ought to fall on them, for the same reason.

If there are any allowances or deductions that ought to be made in favour of the trustee, it is their business to show them, and to take the steps that may be necessary for that purpose. Indeed, if there were any such deductions, they might have shown them, in mitigation of damages, at the trial of the action on the bond, and could then have obtained any deduction from the claim of *Sower*, to which the trustee was entitled, or they might yet obtain it by application to the court of chancery. But there is no dispute about the damages—they are fixed by the agreement.

This is the case of a child claiming his share of his father's estate. He has been injured by the misconduct of the trustee. If he must go into chancery, and liquidate the account, before he can call on the securities, it will subject him to costs, trouble and expense, for which the securities will not be bound to compensate him; it will make him chargeable in part for the misconduct of the trustee. The securities in the bond agree to bind themselves, and do bind themselves for the trustee's fidelity. The bond is intended for the protection of parties entitled to the money, who are frequently infants; and if a loss must be sustained, any expense or trouble incurred by the bad conduct of the trustee, it seems just, and in the true spirit of the act of assembly, should fall on the securities.

JUDGMENT REVERSED.

----

**HARRIS vs. JAFFRAY, use of GWYNN.**

APPEAL from *Baltimore* County Court. This was an action of *Trover*, brought in the late General Court to Oc- duce the assignment, if any he hath, under which he claims the use.

If a verdict is given for a larger sum than the damages laid in the declaration, the plaintiff may before judgment release the excess, and take a judgment for the amount of the damages laid; or if after judgment, but during the same term, he tenders a *remittitur* of a parcel of the verdict, the court may strike out the judgment, and enter a judgment for the amount of the damages charged in the declaration.

If a judgment is entered upon a verdict for more damages than laid in the declaration, no release, or other act of the plaintiff, can give validity to that judgment, but on an appeal, or writ of error, it must be reversed; and the law in that respect is not altered by the act of 1809, ch. 153.

But under the acts of 1809, ch. 153, and 1811, ch. 161, where, by an inquisition on an inquiry at bar, the jury assessed a larger amount of damages than was laid in the declaration, and judgment was rendered for the sum found by the inquisition, on an appeal by the defendant the court of appeals permitted the plaintiff to release the excess, and enter the release on the record, and they amended the record by entering a judgment for the damages laid in the declaration.

Where the record stated that the jury, on an inquiry at bar under the act of 1794, ch. 46, were charged to inquire of the damages sustained by the plaintiff, omitting *and costs*, and the inquiry was not stated to be on motion of the plaintiff. *Quere*. Whether these were fatal errors?

In an action of trover, the defendant, at a subsequent term, after issue had been joined on his plea of not guilty, filed another plea, viz "And the said D, by Z H his attorney, comes and defends the force and injury when, &c. and says that he said P his action aforesaid further against him to have and maintain ought not, because he says," &c. then setting forth that P had, at the *preceding* term of the said court, obtained a judgment in an action of trover against W T, for conversion of the same goods, &c. and concluding the plea—"And this the said D is ready to verify, wherefore he prays judgment if the said P his action aforesaid against him to have and maintain ought," &c. To this plea there was a general demurrer. *Quere*, Whether it was a second plea in bar, or a plea *puis darrein continuance*?

1815.

Harris
vs
Jaffray

MAY.

The plaintiff may require the person, for whose use the action was instituted, to pro-