MAY (E. S.) THE STATE, use of CHAMBERLAINE'S EX'RS. vs. WRIGHT.

By an order of the orphans court in August 1797 the executrix of C S was directed to deliver to S W, one of her sureties in the testamentary bond, all such part of the estate of the testator as remained in her hands. S W entered into bond to the state, dated in September 1797, reciting the order, and conditioned that he should deliver and pay all the goods, &c. which should come to his possession by virtue or under the order, or the value thereof, agreeably to law, "to such person or persons as have right to demand the same, when he shall be thereto legally required," &c. An action of debt was brought on this bond in September 1811, at the instance of one of the creditors of the deceased testator, against one of the sureties therein, who pleaded general performance, and the acts of limitations of 1729, ch 24, and 1715, ch 23—*Held*, that a creditor was not entitled to have the bond sued; as S W could not pay the debts of the deceased, nor recover debts, nor pay legacies, nor settle an account in the orphans court. That he may be likened to one who has letters *ad colligendum.* That he was liable to the administrator *de bonis non*, (the executrix being dead) if one was appointed; and if none appointed, to nobody.

*Held* also, that the bond above mentioned executed by S W, on which the action was brought, was the *thing in action*, and not the judgment mentioned in the replication obtained by the creditor against the executrix of C S in 1803; and that the act of limitations was a bar to the action.

APPEAL from *Queen Anne's* County Court. An action of *debt* was instituted on the 27th of September 1811, upon a writing obligatory, bearing date the 28th of September 1797, and executed to the state, by a certain *Samuel T. Wright, Philemon C. Blake*, and *Thomas Wright*, (the defendant and now appellee,) reciting, that "whereas *Cornelia Southeren*, (late *Cornelia Sewell*,) executrix of the last will and testament of *Clement Sewell*, late of *Queen Anne's* county, deceased, neglected to counter-secure *Samuel T. Wright*, one of her securities on her administration of the said estate, pursuant to an order of the orphans court of said county for that purpose; and whereas the said *Samuel T. Wright* is about to possess himself of the said estate by virtue of process to be obtained from the said court. Now the condition of the above obligation is such, that if the above bounden *Samuel T. Wright*, his heirs, &c. do and shall well and truly deliver and pay all the goods, and chattels, and credits, which shall come to his or their possession by virtue or under such process, or the value thereof, agreeably to the laws of the state of *Maryland*, to such person or persons as have right to demand the same, when he or they shall be thereto legally required, then," &c. The defendant pleaded *general performance.* He also pleaded, (in two different ways,) the 21st *section* of the act of *July* session 1729, *ch.* 24, which en-

acts, "that all actions upon administration and testamentary bonds, shall be commenced within twelve years after the passing of the said bonds, and not after." And he also pleaded the *sixth* section of the act of *April* session 1715, *ch.* 23, entitled, "An act for limitation of certain actions, for avoiding suits at law." The plaintiff replied *non performance* to the *first* plea, and assigned the recovery of a judgment in the general court for the *eastern shore* at September term 1803, in the name of the state, at the instance and for the use of *Thomas Chamberlaine's* executors, against *Cornelia Sewell* executrix of *Clement Sewell;* that a writ of *fieri facias* issued on the said judgment, and was returned by the sheriff *nulla bona.* That on the 13th of August 1804, an action was instituted against *Samuel T. Wright*, one of the securities of *Cornelia Sewell* in the testamentary bond, executed on the estate of *Clement Sewell*, and at May term 1810 a judgment by confession was entered against *Samuel T. Wright* in that action. That at the time of the rendition of the last mentioned judgment, *S. T. Wright*, in virtue of and under the process of the orphans court of *Queen Anne's* county, in pursuance of the order made by the orphans court, had possessed himself of the goods, chattels and credits, which were of *Clement Sewell* at the time of his death, to the value of the debt, &c. which *S. T. Wright* ought to have delivered and paid over unto the said state in satisfaction of the said debt, &c. *Breach*, that *S. T. Wright* hath not paid or delivered over to the state the said goods, &c. or the value thereof, in satisfaction of the debt, &c. There were *special demurrers* to the *second* and *third* pleas, and the causes assigned were, "that it does not appear by the plea that the said writing obligatory, upon which the action is instituted, is in any way included or contained within any of the provisions of the act of July 1729." To the *fourth* plea the plaintiff replied, that the writing obligatory, upon which the action is brought, was executed on the 28th of September 1797, by *S. T. Wright*, and one *P. C. Blake*, and the defendant; that before the debt, or any part thereof, which arose by and upon the said writing obligatory, had been twelve years standing, and within twelve years after the cause of action in the declaration by and upon the writing aforesaid arose and accrued, to wit, on the 2d day of September 1794, an action of debt was instituted in the name of the state, at the instance and for the use of *Thomas Chamberlaine's* executors against *Clement Sewell*, one of the securities of *Samuel Earle*, on the testamentary bond executed on the 24th of March 1788, on the estate of *Richard T. Earle*, for the recovery of the amount of a judgment obtained in the general court at April term 1789, in the name of *Samuel Chamberlaine*, and *Robert Lloyd Nicols* and *wife*, surviving obligees of *James Lloyd Chamberlaine*, for the use of *Thomas Chamberlaine*, against *Samuel Earle*, executor of *Richard T. Earle*. That during the pendency of that action against

1816.

The State
vs
Wright

1816.

The State
vs
Wright

*Clement Sewell,* he died, and *Cornelia Sewell,* his executrix, was summoned and made defendant, and a judgment rendered against her at September term 1803, upon which a *fieri facias* issued, and was returned *nulla bona.* That afterwards, on the 13th of August 1804, an action of debt was instituted in the name of the state, at the instance aforesaid, against *S. T. Wright,* one of the securities of *Cornelia Sewell,* in the testamentary bond executed by her as executrix of *Clement Sewell,* and judgment thereon rendered in *Queen Anne's* county court at May term 1810. *Verification,* that the debt or thing in action was not above twelve years standing at the time of suing out of the original writ in this cause. The defendant in his *rejoinder* to the *first replication,* stated, that after *S. T. Wright* possessed himself of the goods, &c. which were of *Clement Sewell,* under and by virtue of the order and process of the orphans court, to wit, on the 31st of December 1799, the orphans court revoked the letters testamentary which had been granted to *Cornelia Sewell,* and committed to *S. T. Wright,* in due form of law, administration *de bonis non,* with the will annexed, of all and singular the goods, &c. of *Clement Sewell,* unadministered by *Cornelia Sewell.* That the goods, &c. of *Clement Sewell,* which *S. T. Wright* possessed himself of under and by virtue of the order and process aforesaid, were of the goods, &c. of *Clement Sewell,* which were unadministered by *Cornelia Sewell,* and as such were assets by *S. T. Wright* to be administered. He joined in the demurrers to the *second* and *third* pleas. In his *rejoinder* to the *fourth replication,* he stated, that the state had a good cause of action on the said writing obligatory on the 29th day of September 1798, and might then have sued for the said debt, &c. and that the debt or thing in action in the said writing obligatory, and the condition thereof mentioned, had been twelve years standing before the issuing of the original writ in this cause. The plaintiff, in the *surrejoinder* to the *first rejoinder* stated, that under the order of the orphans court goods, &c. unadministered by *Cornelia Sewell* to a very large amount, to wit, &c. were delivered over and came to the hands and possession of *S. T. Wright;* and although the letters testamentary of *Cornelia Sewell* were afterwards revoked, and letters of administration *de bonis non,* with the will annexed, were committed to *S. T. Wright,* there only remained in the hands and possession of *S. T. Wright,* at the time of granting the letters of administration, goods, &c. to a small amount, to wit, &c. and the rest of the goods, &c. to a large amount, and more than sufficient to pay the debt, &c. had been wasted, disposed of, and misapplied. The *surrejoinder* to the *fourth replication* stated, that the debt or thing in action in the said writing, &c. and for the recovery of which this action is prosecuted, had not been twelve years standing before the issuing of the original writ in this cause. Issue joined. The defendant in his *rebutter* to the *first surrejoinder* pleaded, that under and

by virtue of the order and process of the orphans court, the goods, &c. to the amount of, &c. were not delivered over, and did not come into the hands and possession of *S. T. Wright;* but that so much thereof as *S. T. Wright* did receive under and by virtue of the order and process aforesaid, remained in his hands and possession at the time of revoking the letters testamentary of *Cornelia Sewell,* and granting the letters of administration, &c. which were insufficient to pay the debt, &c, and were not wasted, disposed of and misapplied, &c. Issue joined. The county court ruled good the *demurrers* to the *second* and *third* pleas.

1. The plaintiff at the trial, to support the *first issue* joined, read in evidence a copy of the order and decree of the orphans court of *Queen Anne's* county, made on the 8th of August 1797, directing "that *John Southeren,* and *Cornelia* his wife, who is the executrix of the last will and testament of *Clement Sewell,* late of *Queen Anne's* county, deceased, deliver into the hands of *Samuel T. Wright,* one of her securities, for the due administration of the estate of the said *Clement Sewell,* all such part of the said estate which shall be remaining in her hands." And, for the purpose of proving that *S. T. Wright* received a large sum of money of the estate of *Clement Sewell* from one *John S. Blake,* the plaintiff read in evidence a record of a judgment, *fieri facias,* and return made by the sheriff, obtained, sued out and returned, in the name of *Cornelia Sewell,* executrix of *Clement,* for the use of *S. T. Wright,* against the said *Blake;* by which record it appeared that judgment was obtained in the said action in the general court at April term 1796, *fieri facias's* issued, and to October 1798 one was returned, laid on certain lands, which were unsold for want of buyers; a *venditioni exponas* issued to April term 1799, and returned by the sheriff, sold, and the money ready, &c. but which was ordered to be *quashed,* and a new *fieri facias* afterwards issued to September term 1799, and was returned by the sheriff *"satisfied plaintiff, says Sheriff."* The plaintiff also offered evidence by the Hon. *Richard T. Earle,* that he was counsel for *Cornelia Sewell,* and prosecuted the above suit to final judgment, and that he was also counsel for *John Southeren,* and *Cornelia* his wife, after their marriage; that after *S. T. Wright* obtained the aforesaid order, he took upon himself the collection of the money due on the said judgment; that a *fieri facias* was laid on the lands of *John S. Blake,* returnable to April term 1799, which was quashed for irregularity; that another *fieri facias* was laid on *Blake's* lands, returnable to September term 1799. That the sheriff was about selling the lands, and met at *Centreville* for the purpose, when a stop was put to the proceedings in consequence, as he understood, of an arrangement made to pay the money in *Baltimore.* He does not positively know that the money was paid to *Samuel T. Wright* on the judgment

aforesaid; but that after *Samuel T. Wright* obtained the order from the orphans court, the witness became counsel for *John S. Blake*, and was concerned in setting aside the first execution; that he remained counsel for *Blake* till the time of his death, which happened in the year 1803; and that he never heard of any claim being made on *Blake* by *S. T. Wright*, or any other person, on account of the said judgment. That *Blake* was, before the year 1799, a man of large fortune, and remained so till the time of his death. The defendant then offered evidence, that by the order of the orphans court the letters testamentary of *Cornelia Sewell* were revoked on the 14th of August 1799, and that letters of administration *de bonis non*, with the will annexed, was granted to *S. T. Wright* on the 31st of December 1799. The defendant then prayed the court to instruct the jury, that if they believed that *S. T. Wright*, the principal in the bond on which this suit was brought, was, on the 31st of December 1799, appointed administrator *de bonis non*, with a copy of the will annexed, of *Clement Sewell*, that then they cannot from the evidence offered in this cause, find for the plaintiff on the first issue joined; but must find for the defendant on the said issue. This instruction the Court, [*Purnell* and *Worrell* A. J.] gave. The plaintiff excepted.

2. The plaintiff, to support the aforesaid *first issue* joined, and to prove that *Cornelia Sewell* was ordered by the orphans court of *Queen Anne's* county to counter-secure *S. T. Wright*, who was one of the securities of *Cornelia* on the testamentary bond given by her as executrix of *Clement Sewell;* and that in consequence of her not giving him such counter-security, the said court ordered and decreed, that she should deliver over to *S. T. Wright* all the goods, &c. of the said *Clement*, by her unadministered, read in evidence the said order and decree of the orphans court. And the plaintiff then further offered evidence to prove, that afterwards *S. T. Wright*, by virtue of the said order of the orphans court, did receive the sum of £1733 current money of the goods, &c. which were of the said *Clement*, &c. and that he did not, on his being appointed administrator *de bonis non*, &c. or at any time after, return to the orphans court any inventory charging himself as administrator, &c. with the said sum of money, or any part thereof. And also offered in evidence the letters of administration, &c. to *S. T. Wright*, dated the 31st of December 1799. The plaintiff then prayed the court to direct the jury, that if from the evidence so offered they found that *S. T. Wright* did, under and by virtue of the said order of the orphans court, receive the said sum of money of the goods, &c. which were of the said *Clement*, &c. and had before he was appointed administrator, &c. wasted the same, and was not possessed thereof at the time of his being so appointed, that then the plaintiff is entitled to a verdict upon the said first issue. But the court refused to give this direction, being of

opinion, that if *S. T. Wright* had received the property of the said *Clement*, under the said order and decree of the orphans court, and had wasted the same before he was appointed administrator, &c. yet in consequence of his being so appointed, and receiving letters *de bonis non*, &c. the plaintiff could not support the first issue joined in this cause. The plaintiff excepted.

3. The plaintiff then, to support the *second issue* joined, read in evidence a record of a judgment obtained in the general court at September term 1803, in the name of the state, at the instance and for the use of *Thomas Chamberlaine's* executors, against *Cornelia Sewell*, executrix of *Clement;* and also a record of a judgment obtained in *Queen-Anne's* county court at May term 1810, in the name of the state, at the instance and for the use of *T. Chamberlaine's* executors, against *Samuel T. Wright;* which said judgments are set forth in the pleadings herein before stated. The defendant then prayed the court to instruct the jury, that the evidence in this cause is not sufficient to support the *second issue* in fact joined; and the court gave the instruction. The plaintiff excepted; and the verdict and judgment being for the defendant, the plaintiff appealed to this court.

The cause was argued before BUCHANAN, NICHOLSON, JOHNSON, and MARTIN, J.

*Martin* and *Carmichael*, for the Appellant, on the *first* bill of exceptions, contended, that *Wright* was liable under his bond of September 1797, for all monies received under the order of the orphans court. They further contended, that even admitting that after the letters of administration *de bonis non* were granted to *Wright*, he was to be considered as then in possession of the property as administrator, and not by virtue of his bond of 1797, yet as the defendant had taken issue on the fact whether between the date of the bond in 1797, and his letters of administration *de bonis non*, he had wasted the property received by him under his said bond, the question of the liability under that bond, after the issuing of those letters, could not properly arise. That question could only have arisen by the defendant's demurring to the allegation of a *devastavit* by *Wright*, before the date of his letters. They referred to the acts of 1729, *ch.* 24, *s.* 23, and 1734, *ch.* 17, and *Quimby vs. Wroth*, 3 *Harr. & Johns.* 249.

On the *third* bill of exceptions. The defendant relied on the fact, that the debt, if it existed, did not exist more than twelve years, and the issue was joined on this fact. It is objected—1. That the act of 1715, *ch.* 23, does not extend to such bonds; and 2. Twelve years had not elapsed before the institution of the suit. 1. No bond taken in the name of the state was barred by the act of 1715, *ch.* 23, *s.* 6. The word *or* cannot be construed *and.* If so construed, then bonds in the name of the king would be barred, unless they were also for the use of the king. All bonds

in the name of an individual would be excluded,, although for the use of the king. Bonds in the name of the king are not barred because the public are interested. Testamentary bonds were given to the commissary general in 1715. This bond is taken in the name of the state, and the state is barred by no time, except where provision is specially made by statute. 2. Was the debt or thing in action above twelve years standing? There was no debt due from *Sewell's* estate until the judgment against his executrix in 1803, and of course there was no cause of action in this case upon which limitations could attach. A cause of action existed before the judgment, but the debt was not due. No judgment could have been obtained unless the debt was due when the suit was brought. The liability was on the misapplication of the assets by *Earle.* When *Wright's* bond was given in 1797, a suit was then depending against *Sewell's* executrix, and that bond could not be sued without nonsuiting the action against her. They referred, on these two points, to *Esp. Dig.* 151, 226. *Johnson vs. Smith,* 2 *Burr.* 950. *Trueman vs. Fenton, Cowp.* 548. Stat. 32 *Hen.* VIII, *ch.* 2, *s.* 4. *Foster's* case, 8 *Coke,* 65.

*Bullitt, Chambers,* and *Harrison,* for the Appellee. On the *first* bill of exceptions. There is no evidence to charge *Wright* with *Blake's* judgment. It has been contended that no issue ought to have been joined on the allegation of *devastavit,* that the defendant ought to have demurred. As the plaintiff made the allegation, the defendant had a right to join issue on it. He might have demurred, but he was not compelled. The case of *Quimby vs. Wroth* was, whether the possession was adverse or not, and the court received the declarations of the party to show it was not adverse. There is no bond required by the act of 1729, *ch.* 24; but the act of 1734, *ch.* 17, demands the bond, and prescribes the condition, in which the obligor is only bound to deliver *goods and chattels,* not *rights and credits,* as stipulated in the bond given in this case. If then *Wright* did receive the amount of *Blake's* judgment, yet the condition of the bond cannot legally embrace it. Where the statute prescribes the form of a bond it must be pursued. 6 *Bac. Ab* tit. *Statute,* (H) 379, cites *Slowney's* case, *Hob.* 83. *The Proprietary vs. Jordan,* 3 *Harr. & M·Hen.* 179. *Downes vs. The State, use of Tilden,* 3 *Harr. & Johns.* 239. When *Wright* was appointed administrator *de bonis non,* he was the person to receive the whole funds, and as administrator he was to hold the property he received under the order of 1797, and therefore the bond he gave under that order could not be sued; and if between that order and the granting letters of administration to him, he wasted the property, yet his sureties under that order are discharged. 3 *Bac. Ab.* tit. *Executors,* &c. (H) 58. There is nothing to show that *Wright* had not the

money he received from *Blake*, when the letters of administration were obtained by him.

On the *second* bill of exceptions. Under the act of 1729, there is no authority given to the creditor to support an action against the property delivered—the security was to hold it; and when the letters were revoked, and letters *de bonis non* were granted, the administrator was to receive the property. He could only sue the bond given under the order in 1797. The act of 1734 only required other security. Under the order for the delivery of the property, the property so delivered was to be *valued.* There was no list of debts directed to be made. *Rights* and *credits* were not embraced. Where a bond is given by two obligors, and the obligee dies, having appointed one of them his executor, both are discharged at law. *Cheetham vs. Ward*, 1 *Bos. & Pull.* 630. Where a personal action is once suspended it is gone for ever. *Carey vs. Goodinge*, 3 *Brown's Chan. Rep.* 110. *Berry vs. Usher*, 11 *Ves.* 87. Where a man is to be the party suing and the party sued, the law will intend that to be done which the party defendant might have been compelled to do. *Wright* was bound to pay and account for all he received under the order of 1797, whether wasted or not, before letters *de bonis non* were granted to him. If then *Wright* wasted the property, he was a debtor to the amount, and when he was appointed administrator *de bonis non*, that amount became assets in his hands, and discharged the bond of 1797. The sureties of an executor are discharged on the executor being appointed guardian. He is liable for the amount as guardian. *The Proprietary vs. Jordan*, 3 *Harr. & M'Hen* 179.

On the *third* bill of exceptions. When did the cause of action accrue? Is the *bond* the "thing in action," or the judgment which it is sued to recover? *Sewell* was liable in 1784, as the surety of *Earle*; and although an action was brought against the executrix of *Sewell*, yet it need not to have been brought. The plaintiff might have brought the suit on *Wright's* bond. If *Sewell's* executrix had paid the judgment before a judgment was obtained against her, it would have been allowed to her in the settlement of the estate, because her testator was bound to pay. There was an apparent insolvency of the estate of *Sewell*, and therefore no judgment was necessary against the executrix. Her testamentary bond might have been sued under the act of 1720, *ch.* 24, *s.* 2. The act of 1715, ch. 23, extends to all bonds in language in which the state is interested. The word *or* shall be read *and. Fowler vs. Padgett*, 7 *T. R.* 509; yet doubts arise whether that act takes in administration and testamentary bonds—the act of 1729, *ch* 42, includes them. If the bond in question is not an administration bond, then the act of 1715, being general, embraces it. When the property of *Sewell* was delivered to *Wright*, if on the bond he then gave, he was liable to creditors, and his bond was liable, the plaintiff could

1816.

Tilghman
vs
Steuart

have supported a suit; but if he was only liable as adminis-
trator *de bonis non*, then the suit could not be maintained.

NICHOLSON, J. delivered the opinion of the court.
There are in reality but two questions in this case; the
one *whether* the bond given by *S. T. Wright*, under the
order of the orphans court, for possessing himself of *Sew-
ell's* property, could be sued by a creditor of *Clement Sew-
ell;* and the other on the act of limitations.

The condition of the bond is, that the obligor shall deli-
ver *to the party entitled* the whole property which he shall
possess himself of    A creditor is not such a party; for the
obligor in the bond cannot pay the debts of the deceased,
nor can he recover debts or pay legacies, or settle an ac-
count in the orphans court. If not authorised to pay debts,
of course he cannot be sued for not paying them. He may
be likened to one who has letters *ad colligendum*. The
obligor in the bond is liable to the administrator *de bonis
non*, if one is appointed; and if none appointed, he is lia-
ble to nobody. But it is clear that the commissary gene-
ral heretofore, and the orphans court now, who have the
care of the deceased person's estate, would take the neces-
sary steps for the settlement of the estate by revoking the
original letters, granting letters *de bonis non*. No incon-
venience, therefore, can ensue from holding the obligor in
the bond responsible only to the administrator *de bonis non*.

On the pleas of limitations, the bond executed by *S. T.
Wright, Thomas Wright* and *P. C. Blake*, on which this
suit is brought, is the *thing in action*, and not the judg-
ment against *Sewell's* executrix.

JUDGMENT AFFIRMED.