Thruston *vs.* Blackiston.

(Decided 20th June, 1872.)

---

GEORGE A. THRUSTON and CHARLES M. THRUSTON, surviving obligors of CHARLES B. THRUSTON, *vs.* ANDREW H. BLACKISTON, Trustee.

*Jurisdiction in Equity — Trustee's Bond — Statute of Limitations.*

Where a trustee dies before the completion of his trust and the ascertainment of his indebtedness to the trust estate, a Court of Equity will entertain a bill filed against the sureties on his bond, by his successor in the trust, and will decree the payment by the sureties of the amount found to be due to the trust estate.

A trustee's bond is governed by the provisions of the Act of 1715, ch. 23, section 6, and the right of action thereon accrues, and limitations begin to run, only from the time when a breach of the condition of the bond occurs.

APPEAL from the Circuit Court for Allegany County, in Equity.

Under the will of Jeanet Clarke, executed on the 15th of February, 1847, a certain Matthew St. Clair Clarke was appointed trustee to carry out certain trusts therein created. George A. D. Clarke, called George Augustus Clarke in the will, and such children as he might leave at the time of his death, were the primary beneficiaries of the trust. Upon the petition of the said George A. D. Clarke, filed in Allegany county Court, as a Court of Equity, a decree was passed on the 1st of November, 1848, appointing Charles B. Thruston in the place of the said Matthew St. Clair Clarke, to carry out the provisions of the said will, who, on the third of the same month, gave bond as such trustee, with the appellants as his sureties; he entered upon the discharge of the trust, and continued therein until his death, which took place in December, 1868. It does not appear when George A. D. Clarke died, but after the death of Charles B. Thruston, Reuben Middleton, who was appointed guardian to George A. Clarke and Jeanet V. Clarke, infant children of George A. D. Clarke, deceased, filed his petition in the cause on the 8th of January, 1869, praying the appointment of the appellee as trustee, instead of Charles B. Thruston, deceased; thereupon a decree was passed in the cause on the 13th of the same month, appointing the appellee as such trustee, who filed his bond on the 1st of February following, and entered upon the duties of the trust. By the provisions of this decree, the appellant George A. Thruston, as administrator of Charles B. Thruston, deceased, was required to render an account to the Circuit Court, of all the property, money, &c., belonging to the trust, which might have come into the hands of his intestate, and that might then be in the hands of the administrator, and deliver and pay over the same to the appellee as trustee. The answer of the administrator, filed on the 13th of April, 1869, stated that the respondent had found among the papers, and accounts of property of his intestate, no money

or security of any kind, or any valuable papers belonging to the estate of Jeanet Clarke, deceased, and such other unimportant papers as he had found, he had already given to the appellee; that he knew nothing of the state of the accounts between his intestate and the estate of the said Jeanet Clarke, further than the account book of his intestate, which he had already exhibited to the appellee, showed, and which was, so far as it went, the same statement as appeared in the audits in said cause, and other papers.

After the filing of this answer, the auditor stated an account between the deceased trustee and the estate of Jeanet Clarke, on the 15th of April, 1869, and another on the 16th; the latter being stated under an order of Court, both of which were duly ratified on the 20th of May following, after objections filed thereto by the said administrator, and submitted for the determination of the Court. By the last account of the auditor, the deceased trustee was found indebted to the trust estate on account of principal and interest to the 16th of April, 1869, in the sum of $2,106.64. To recover this sum with interest, the bill in this case was filed on the 7th of July, 1869, by the appellee against the appellants, as sureties on the bond of the deceased trustee. The defendants, by their answer to the bill, admitted that all the proceedings in said cause took place; "that a corrected audit was made, and an audit, also, ascertaining and finding a certain sum due by the deceased to said estate; and that the complainant made several demands of the defendants, after the said last audit was made and ratified, to pay him the sum of money reported to be due by said audit from the deceased trustee, at his death, to said estate, and the defendants refused to do so." And then avowing " that they did not know whether said amount, or any amount was due as reported, and that the thing in action, or complaint, or demand against them, stated in the bill in virtue of the said bond made by them, and the condition thereof, was above twelve years standing, &c., and they relied upon the Statute of Limitations." They also insisted

that the Court had no jurisdiction of the matters and things in the complainant's bill; and denying all other matters and things, not therein specially answered, admitted, replied to, or denied, they prayed to be dismissed, &c. The general replication was admitted to have been filed. It was also admitted that the complainant had received, on account of his claim against the defendants, certain dividends from the estate of the deceased trustee.

On the 2d of March, 1871, the Court (MOTTER, J.) decreed that the defendants should pay, or bring into Court, to be paid to the complainant, trustee, the sum of $1,770.45, with interest thereon from the 19th of December, 1870, &c.

From this decree the defendants appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON, MILLER and ROBINSON, J.

*George A. Thruston*, for the appellants.

The only question on this appeal for the determination of the Court is: "Whether the sureties on the deceased trustee's bond of November 2d, 1848, can be held, or are liable for moneys received by such trustee for a sale made on July 30th, 1868, and received part then and the remainder afterwards—the sureties having denied all liability on said bond for the same, and plead the Statute of Limitations of this State, and the expiration of all responsibility on said bond long before the said money was received or the property sold, for which it was received or any such sale contemplated or dreamed of by any one."

There is no pretence of any renewal of the original liability on the bond, or any continuance of it, or of any other responsibility than that taken by the appellants as sureties on signing and sealing said bond as sureties on November 2d, 1848, and which ended twelve years after; nor was there any connection between the appellants, or either of them, and the proceedings in said cause, nor any knowledge on the part

of either of said appellants that such sale was made, or any money received by the deceased trustee therefor, until after his death, which happened in the month of December, 1868. No demand was made on either of the appellants for any sum, as due by the deceased to said trust estate, until about the 1st of June, 1869.

The bond was executed and given November 2d, 1848, and the liability of the appellants, as sureties thereon, then began, and wholly ceased and determined on the 2d day of November, 1860.

After the 2d day of November, 1860, the bond itself was no longer admissible in evidence against the appellants, or either of them, or against the trustee, if living, for any purpose, as a cause of action or evidence of indebtedness of any of the obligors thereon to any one. *Act of* 1715, *ch.* 23, *sec.* 6.

The liability and contract of sureties on such bonds is, that the trustee "shall well and faithfully perform the trust reposed in him by said decree, or that may be reposed in him by any future decree or order in the premises."

From what time is the trustee to do so? From the day the bond is given. For how long a time do the sureties contract that the trustee "shall so well and faithfully perform," &c.? So long as, and no longer than, the bond "shall be good and pleadable or admissible in evidence against any person or persons of this province." And when does such bond cease, as a thing in action, so to be admitted in evidence? The reply, in the words of the statute, seems conclusive of the question, viz: "*Not after* . . . . the debt *or thing in action*" is "above *twelve years standing.*"

"The debt," or "*thing in action,*" is the contract evidenced by the bond, that the trustee shall perform the *decree* under which the bond is given from the time when it is given, and the liability thus commencing continues in force for twelve years thereafter and no longer.

That such is the intent and meaning of the Act of 1715, ch. 23, sec. 6, is also evident from the Act of 1729, ch. 24,

sec. 21. This Act, &c., declaring testamentary and administration bonds to be within the Act of 1715, ch. 23, and enacting that all actions upon them shall be "*commenced within twelve years after the passing of the said bonds, and not after.*" This is a plain legislative construction of the meaning and intent of the former Act, viz., that all *bonds, specialities,* are within it, and that they are to be good and pleadable for twelve years after they are given or "passed," viz., after the liability commences, and no longer.

That the bond is to perform the decree, and the liability of the sureties, that the principal shall do so, and also perform any further decree in the premises, passed during the period of their responsibility, and for so long as the same continues, is the clear meaning and limit of the contract, and the Statute of Limitations begins to run when the liability commences. But in this case, the only decree that could entail any liability, even on the principal himself, and irrespective of *his liability* on the bond in question, is that preceding the giving of the bond. This decree bears date November 1st, 1848. The breach alleged is the failure to account for the proceeds of a sale made nearly eight years after the contract of the sureties had been fully performed.

The case of *Schell vs. The State, use of Sower,* 3 *H. & J.,* 538, is a direct authority in favor of the appellants, and really an adjudication of the matter. *State, use of Chamberlin's Ex'r vs. Wright,* 4 *H. & J.,* 148, 154, 156, is also a decisive authority in this case.

*A. Beall McKaig* and *A. H. Blackiston,* for the appellee.

If a Court of Equity has not jurisdiction of this case, the appellee has no remedy ; for, to support the jurisdiction of a Court of Law, in a suit upon a trustee's bond, it must appear that an audit has been filed, confirmation had, notice thereof given to, and demand made of, the trustee in his lifetime. *Oyster vs. Annan,* 1 *G. & J.,* 450 ; *Scott vs. Ducker,* 2 *Md.,* 284 ; *Dent vs. Maddox,* 4 *Md.,* 522.

In this case, Charles B. Thruston died before even an audit had been prepared, showing the state of the accounts between Jeanet Clarke's estate and himself. How was it possible, then, for the other conditions necessary to the jurisdiction of a Court of Law, to be complied with in this case? *Brooke vs. Brooke, et al.*, 12 *G. & J.*, 320; *Dent vs. Maddox*, 4 *Md.*, 522, 529; *Boteler vs. Diggs*, 21 *Md.*, 240.

The two Acts of 1715, ch. 23, sec. 6, and 1729, ch. 24, sec. 21, are now merged in Article 57, sec. 3, of the Code; that part of which, contained in these words, that "no bill, &c., or other bond, &c., shall be good and pleadable, &c., after the principal debtor, &c., shall have been dead, &c., *or the debt or thing in action above twelve years standing*," is relied upon by the appellants as a bar to the relief claimed.

The only question (upon this point) between us is, whether the Statute begins to run against conditional bonds of this description, with the execution thereof, or whether it begins with the violation of the condition. In other words, whether the bond becomes "a debt or thing in action," *immediately upon its execution*, or whether it does not become "a debt or thing in action," *only when the condition thereof has been broken?* The appellants maintaining that the first proposition, and the appellee that the latter, is the true construction of the Statute.

There is no decision in Maryland which *directly* construes the Statute in reference to trustees' bonds, but the case of *Hall's Adm'r vs. Creswell, et al.*, 12 *G. & J.*, 47, fixes the time when an indemnity bond, which is a conditional bond, shall first be subject to the running of the Statute.

That case decided that the Statute does not commence to run against an indemnity bond until the party for whose benefit the bond was given, has been "damnified." In other words, *not until the condition of the bond has been broken.* It is at that time the bond becomes "a debt or thing in action," and from that time the party has twelve years allowed him for bringing suit upon the bond.

Prior to the appointment of the appellee as substituted trustee, there was "no one *in esse* competent to sue." Under such circumstances, it would be impossible for the Statute to operate. *Ruff's Adm'r vs. Bull*, 7 *H. & J.*, 14.

In this case the *cestuis que trust* are infants under the age of twenty-one years, and as such are expressly excepted by the Statute from the effect thereof. *Art.* 57, *sec.* 3, *of the Code.*

Again, this trust was an express subsisting trust, during the continuance of which the Statute could not "operate." *White vs. White*, 1 *Md. Ch. Dec.*, 53; *Green, Ex'x, vs. Johnson*, 3 *G. & J.*, 399; *Hanson, et ux. vs. Worthington*, 12 *Md.*, 441.

STEWART, J., delivered the opinion of the Court.

There are two questions involved in the case—the one, as to the jurisdiction of the Court of Equity over the sureties on the bond of the trustee, and the other, as to the effect of the plea of limitation.

There is no doubt as to the duty of the administrator of the deceased trustee to render an account of the trust. No error is shown in the proceedings resorted to, for the purpose of ascertaining the liability on the bond of the trustee. See *Dent vs. Maddox*, 4 *Md.*, 522.

It is well settled, by numerous decisions in the State, that the jurisdiction of a Court of Equity will embrace this case, where the trustee has died, without the completion of the trust, and the ascertainment of his indebtedness. See *Oyster vs. Annan*, 1 *G. & J.*, 450; *Brooks vs. Brooke*, 12 *G. & J.*, 306; *Scott vs. State*, 2 *Md.*, 284; *Dent vs. Maddox*, 4 *Md.*, 522; *State, &c., vs. Mayugh & Bell*, 13 *Md.*, 371; *State, use of Boteler, vs. Digges, et al.*, 21 *Md.*, 240. Nor does the Act of Limitation afford any bar to the relief sought by the bill.

"The debt or thing in action"—the sum found to be due by the trustee, from the proceedings in the cause—has not been standing twelve years.

Where relief is sought in a Court of Equity, it is an ordinary rule of that Court that the cause of action or suit arises

as soon as the party has a right to apply for relief. *Story's Eq. Jur., sec.* 1521.

The Act of 1715, chap. 23, sec. 6, which is substantially incorporated into the Code, Article 57, sec. 3, together with the Act of 1729, ch. 24, sec. 21, does not admit of the construction insisted upon by the appellants.

The language of the 21st section of the Act of 1729, chap. 24, in reference to testamentary and administration bonds, is very different from the terms of the 6th section of the Act of 1715, chap. 23, applicable to other bonds and specialties, generally.

There had been some question, whether the Act of 1715, chap. 23, sec. 6, applied to testamentary and administration bonds, and the 21st section of the Act of 1729, chap. 24, was enacted to embrace them. That section declares "that all actions upon administration and testamentary bonds shall be commenced within twelve years after the passing of the said bonds."

This clearly and expressly confines the right of action within twelve years from the *passing of the bonds.*

But the 6th section of the Act of 1715, ch. 23, provides that no bond shall be good and pleadable, or admitted in evidence, after the principal debtor and creditor have been both dead twelve years, "or the debt, or thing in action above twelve years standing," and not twelve years from the *passing* of the bond.

The 3d section of the 57th Art. of the Code, incorporates the 6th section of the Act of 1715, ch. 23, and the 21st section of the Act of 1729, ch. 24, placing testamentary, administration or other bonds, (except sheriffs' and constables') judgments, recognizances or other specialties, except such as shall be taken for the use of the State, in the same category, and subject to the same construction as the instruments embraced by the 6th section of the Act of 1715, ch. 23.

The bond in controversy here, was not an administration or testamentary bond, and therefore not embraced by the Act of 1729, or subject to the construction to be given to that

Act, but is governed by the provisions of the Act of 1715, ch. 23, section 6.

Under the effect of the Act of Limitation, now operating, bonds are not pleadable after the principal debtor and creditor have been both dead twelve years, " or the debt or thing in action, above twelve years standing."

If the Legislature had intended to confine the right of action to a period within twelve years from the passing of the instrument, language such as is employed in the 21st section of the Act of 1729, ch. 24, would have been used; to wit, that action shall be commenced thereon, within twelve years from the passing of the bonds.

But other terms are employed, to wit; that they shall not be pleadable, &c., when *the debt,* or *thing in action* is above twelve years standing.

Upon bonds, with condition for the payment of money at a future day, or for the performance of some duty, there is nothing in action until the expiration of the time limited for the payment of the money, (*Glassgow's Adm'r vs. Porter, et al.,* 1 *H. & J.,* 109,) or until a breach of the condition occurs, *Hall's Adm'r vs. Creswell, et al.,* 12 *G. & J.,* 47.

The bond, with condition for future performance, according to the meaning of the Act of Limitation, is not a debt, or thing in action, as soon as it is executed, because no suit could then, by its terms, be brought upon it, but when a breach occurs, or the condition is violated, the right of action accrues and limitation begins to run.

The cases of *Schell vs. The State, use of Sower,* 3 *H. & J.,* 538, and *The State use of Chamberlin's Exc'r vs. Wright,* 4 *H. & J.,* 148, relied upon by the appellants, and which we have carefully examined, are not in conflict with this view.

We find no error in the ruling of the Circuit Court, and its decree must be affirmed.

*Decree Affirmed.*

(Decided 20th June, 1872.)

MILLER, J., dissented.