## J. & C. BALTZELL vs. Foss, et al.—June, 1827.

The lands of which G F died seized, on the application of his heirs, were sold under an order of the court of chancery, by a trustee appointed for that purpose, to J & C B, and the sale was ratified. The purchasers were creditors of J F, one of the heirs, and filed a petition setting forth their claim, the death of J F, that his children, who were minors, resided in *Illinois*, and praying an order of publication against them, and payment of their debt; it did not state that J F's personal estate was insufficient to pay his debts. The chancellor, without granting any order of publication, dismissed the petition at once. On appeal, it was held, that creditors may, by way of petition, instead of pursuing the accustomed course of an original bill, affect funds under the control of chancery upon the same terms that they might by bill, and that notwithstanding the defect in the petition in this case, the chancellor erred in deciding the merits of the petition without publication, or without an answer, and without setting it down for hearing; as the right existed the petition might have been amended, and the defect cured, if the proceedings had progressed to a hearing; and to enable the petitioners to subject the funds in question to the payment of debts, they must show either that no personal fund existed applicable to the extinguishment of their claims, or that they are insufficient for that purpose, and must, in addition, establish their claims in the customary method.

The acts of 1785, *ch.* 72, and 1794, *ch.* 60, *s.* 2, are in *pari materia,* and where proceedings are had under the one law or the other, to sell real property for the payment of debts, evidence of an insufficiency of assets will be required.

APPEAL from the Court of Chancery. This case, the facts of which are stated by the Judge who delivered the opinion of this court, was argued before BUCHANAN, Ch. J. and EARLE, MARTIN, STEPHEN, ARCHER, and DORSEY. J. by

*Williams,* (District Attorney of *U. S.* ) for the Appellants; and by

*Scott,* for the Appellees.

ARCHER, J. delivered the opinion of the Court. The representatives of *John Foss, Jacob Foss* and *George Foss,* minors, by *Mary Foss* their next friend, the said *Mary Foss* and the widow of *George Foss, jr. Ann Foss,* Margaret *Foss, Thomas Owens* and *Elizabeth* his wife, *Christiana Sadler, Joseph Foss* and *Catharine Foss,* the representatives of *George Foss,* of the city of *Baltimore,* applied to the court of chancery for the sale of the real estate of which *George Foss* died seized, alleging that some of the representatives were minors,

and that a sale would be conducive to their interest. The court of chancery having instituted such inquiries as were required by law for the purpose of ascertaining the value of the real estate of *George Foss,* and whether it would be conducive to the interest of the parties that it should be sold, decreed the sale of the real estate as prayed for by the petition, and appointed a trustee for that purpose, who in the execution of the trust committed to him, exposed the lands to sale, and reported to the court that *Jacob* and *Charles Baltzell,* (the appellants,) became the purchasers of certain portions of the real estate to the amount of $3335. This sale was ratified and confirmed by the court on the 24th of September 1825.

On the 26th of October following, *Jacob* and *Charles Baltzell,* the purchasers, by petition represented to the chancellor, that *Catharine Foss,* one of the heirs of *George Foss,* was indebted to them in the sum of $918 13, and that *John Foss, Joseph Foss* and *Catharine Foss,* three other heirs of *George Foss,* were jointly and severally indebted to them in a note for $1958 58, with interest from the 26th of December 1822, which claims were exhibited with the petition, and prayed the chancellor to order that the trustee should credit them on account of their purchases to the extent of their claims against the representatives entitled to a distributive share of the proceeds of the estate; which prayer was conditionally granted, and an order, in conformity thereto, was passed, directing the credit to be given, provided cause should not be shown to the contrary on or before the 20th of November 1824. Answers were filed to this petition by *Catharine Foss, Joseph Foss* and *Christiana Sadler.* No answer seems ever to have been filed by the representatives of *John Foss,* nor does it appear that a copy of the chancellor's order was ever served on them. In this state of the proceedings the chancellor dismissed the petition of *Jacob* and *Charles Baltzell,* on the 7th of January 1825. Afterwards the petitioners renewed their petition, praying, under the circumstances which they have stated, that their application should be reinstated, and that the chancellor would review his decree dismissing their petition. It alleged the payment of all the debts of *George Foss* by his executrix, before the application for the sale of his lands by his representatives—

averred that *John Foss* had died in the state of *Illinois,* and prayed publication against his legal representatives, who are parties to the bill; and they furthermore withdrew all application for a reimbursement from the amount of their purchases to the extent of any claim they had against all or any of the representatives of *George Foss,* except as against the children and legal representatives of *John Foss.*

No order for publication ever passed in conformity with the prayer of the petitioners; but the court, acting on the petition, decreed at once its dismissal, upon the ground that the petitioners' remedy was at law; and from this order an appeal has been taken.

This court are not aware of any remedy which the petitioners could have for the recovery of their claim against the heirs of *John Foss,* if his personal estate be insufficient to pay his debts, other than that which they have been pursuing. Unless there are personal assets, if they are left to law, they are entirely remediless. The law has pointed out no mode by which its process could reach these funds, which are in chancery for distribution. They may not, strictly speaking, be said to be in litigation, but they are under the control and power of a court of equity, whose jurisdiction, courts of law could not be permitted, by its process, to oust.

The act of 1794, *ch.* 60, *s.* 2, authorises the sale of the lands of nonresidents, which they shall derive by descent or devise, for the payment of the debts of the person from whom they descend, or by whom they are devised, and makes no provision relative to a deficiency of personal estate. But the act of 1785, *ch.* 72, requires that the personal estate shall be insufficient for the payment of debts before the real estate of the deceased shall be subjected to sale for their payment, and is general in its terms. The act of 1794, above referred to, is supplementary to the act of 1785, and is in *pari materia.* They must, therefore, be construed together; and evidence will be required, of an insufficiency of assets, where proceedings are had under the one law or the other.

The petitioners then, to entitle themselves to a favourable judgment, and to subject these funds to the payment of debts, must, before they can succeed, show, either that no personal

fund existed applicable to the extinguishment of their claims, or that they are insufficient for that purpose; and must, in addition, establish their claims in the customary method.

The petition is informally and untechnically drawn, and is indeed, defective in substance in not alleging one or the other of the above facts indispensable to give jurisdiction to the court in their final decree, and it would also seem to require amendment in its prayer, which designates the object it desires to attain.

It cannot, at this day, be questioned but that creditors may by way of petition, instead of pursuing the accustomed course of an original bill, affect funds situated as are these; yet unless the petitioners are the only creditors of *Foss*, they could not have the entire fund going to these representatives, applied to the extinguishment of the purchase. Such a course would be doing injustice to other creditors, if such existed; but they could be permitted, as on an original bill by a single creditor, to come in for their distributive share.

Notwithstanding the defects in the petition to which we have adverted, we conceive the court erred in deciding the merits of the petition without publication or without an answer, and without setting it down for a hearing. We cannot say, had the publication been ordered, or had it been refused merely without any decision on the merits of the petition, but that an amended petition might have been filed—the right existing to do so; nor can we say that the respondents might not have confessed all the necessary facts by answer, or failing to answer, upon an amended petition being filed and publication made, that the necessary proofs would not have been adduced to have enabled the chancellor to have decreed the application of these funds to the extinguishment, so far as they would go, of the debts of the deceased, and among the rest that of the petitioners. The order, therefore, of the chancellor, dismissing the appellants' petition, is reversed.

ORDER REVERSED.