# Henry H. Dent *vs.* James Maddox and others.

In 1830 a trustee was appointed to sell a deceased's real estate for payment of debts, and the sale was made, reported, and affirmed *nisi* in 1831; in 1842 the heirs at law filed a petition that the trustee bring the proceeds into court and distribute the same to them, upon the ground that the debts had not been proved or were barred by limitations; in 1846 they filed another petition suggesting the death of the trustee and praying that his executor might be made a party, and administer the trustee's estate in equity. Held:

That the executor was properly chargeable in this form of proceedings, and the proceeds of real estate sold by him under the will of his testator, as authorised by the act of 1831, ch. 315, are applicable to the claim of the heirs at law as personal assets in his hands, and the widow and heirs at law of *the trustee* need not be made parties.

The heirs at law may file the plea of limitations to claims against the estate of their intestate, and the trustee appointed for the sale of the real estate, when called upon to account, cannot claim an allowance for debts of the deceased paid by him under a mistaken view of his authority as trustee.

The fact that the decree appointing the trustee contained no direction that he should bring the proceeds of sale into court, cannot be construed into an authority in him to disburse the trust fund.

Before an audit distributing the fund has been made and ratified, trustees have no power to pay away the proceeds of sale, and if they do so it is at their own risk, and they can be in no better condition than the creditors when they have paid.

If the trustee, in consequence of the terms of the decree, feels any embarrassment as to his course, he should seek the aid and direction of the court.

It is the duty of a trustee to collect the proceeds of sale or show why he does

not, and if he fails to do this he must be dealt with as if they had come to his hands.

A suit at law upon a trustee's bond cannot be maintained until after an audit, confirmation, notice and demand of the trustee.

The practice of calling upon trustees and their representatives to account in equity for the trust funds is of long standing in this State, and relief will not be refused merely on the ground that the application for an account is made in the cause in which the original decree was passed.

The 10th and 11th secs. of the act of 1831, ch. 315, apply to all cases where executors are authorised and directed to sell real estates, the object of these sections being to save the expense and delay incident to chancery proceedings.

Where a sale of real estate is made by an executor under this act, he represents all parties in interest as fully as he would in any case involving the personal estate of a deceased person.

In such case the widow is to be treated as a purchaser for value and entitled to an investment for her life, not of the whole, but only of so much of the proceeds as may remain after the settlement of the estate.

A copy of the docket entries of a case against an executor, referred to a referee, but upon which no award or judgment appears to have been rendered, is not sufficient proof of a claim against the estate.

APPEAL from the Court of Chancery.

The appeal in this cause was taken from an order of an associate judge (BREWER) of the third judicial district, acting as chancellor, to whom the case was certified under the act of Assembly by the chancellor, who had been counsel for one of the parties. The proceedings in the cause are so fully stated in the opinion of this court as to render any additional statement unnecessary.

The cause was argued before LE GRAND, C. J., MASON and TUCK, J.

*Cornelius McLean* for the appellant, after stating the facts of the case, and remarking that the sale of the real estate of Isaac Maddox directed his *whole* estate to be sold, but did not direct the trustee to *bring the proceeds of sale into court* for distribution, and in this particular differed from the ordinary form of decrees, insisted:

1st. That as there was no proof that the purchase money

was ever paid, there was no ground for charging the trustee, and if the lapse of time was relied upon to show its payment, it was equally available against the heirs at law in claiming the net proceeds.

2nd. The court of chancery had no jurisdiction in this case, and there was no ground shown for its jurisdiction by an *original bill* to proceed against the executor, as there was no proof to show that any of the trust property was in his hands. 1 *Story's Eq.*, secs. 530, 535. The case of *Reigart and Stevenson, vs. Stevenson*, in *manuscript*, decided at June term 1836, was such a case as this, and the bill was dismissed by this court. If such proceedings were allowed all estates would be settled in chancery, and the orphans courts would be entirely stripped of their powers. 4 *Gill*, 376, *Warfield vs. Owens*.

3rd. The court had no right to apply the proceeds of the realty, because that had been specifically devised in trust to Henry H. Dent, not as executor, but for the benefit of the widow.

4th. As the widow was a purchaser for a valuable consideration, she was entitled to an investment for life, and the court had no right to force her to take an allowance in lieu thereof in a case where she was no party.

5th. As to the real estate, the heirs and devisees ought to have been made parties to defend their interests.

*Nicholas Brewer, of Jno.*, for the appellees. There is nothing novel in this case. It is simply one calling upon the executor of a trustee who has sold an estate under a decree to bring the proceeds into court and account. He says the only funds he has in his hands liable to the claim are the proceeds of lands sold by him under the will of his testator, who was the defaulting trustee. The questions then are:—1st, are these funds liable? and 2nd, are the proceedings regular? The act of 1831, ch. 315, sec. 10, makes the fund personal estate, and to be accounted for as such; the proceeds, therefore, are clearly liable to our claim. That the proceedings

are regular, and that the executor of a deceased trustee can be called upon to account by a petition filed in the case in which the trustee was appointed, is clearly settled by the cases in 1 *Bland*, 410, 415, *Mackubin vs. Brown; Do.*, 417, *Williamson vs. Wilson*, and 3 *Bland*, 284, *Coombs vs. Jordan.*

Tuck, J., delivered the opinion of this court.

A decree for the sale of the real estate of Isaac Maddox, for the payment of his debts, was passed by Charles county court, as a court of equity, in November 1830. A sale was made and reported by James Brawner, the trustee, and an order of ratification nisi was passed in November 1831, the report stating that the purchaser had complied with the terms of sale, by executing his bond with sureties named in the report. At this time, also, the case was referred to the auditor for an account.

Nothing further appears to have been done in the case, until September 1842, when the appellees, heirs at law of Maddox, who were minors when the decree passed, filed their petition praying that the proceeds of sale might be brought into court by the trustee. An order *nisi* was passed for this purpose, of which the trustee had notice, but he does not appear ever to have answered, or shown cause against the petition, though he subsequently participated in taking proof, before the auditor, in relation to claims against Maddox, which he sought to have allowed out of the proceeds of sale. Three accounts, A, B, C, were stated by the auditor of Charles county court, in the last of which claims to a large amount were allowed, absorbing nearly the whole purchase money. After this the case was removed to the high court of chancery, and subsequently certified to his Hon. Judge Brewer for decision.

On the 4th March 1846, the auditor in chancery reported another account, from which he excluded all the claims except the complainants, on the ground that they were not proved, and were subject to the plea of limitations, which had been filed against them. In this account the proceeds of sale, after

deducting expenses and the complainants' claim, were dis-
tributed among the appellees, as heirs at law of Maddox.

On the 17th July 1846, the heirs at law, by petition, sug-
gested the death of James Brawner, the trustee, and prayed
that the appellant, his executor, might be made a party, and
that relief might be had against him.   The appellant in his
answer denied that he had any part of the trust fund, and,
also, insisted that Maddox died insolvent, and that the pro-
ceeds of sale had been applied in payment of his debts.   He
also filed exceptions to the auditor's account, of March 1846,
in accordance with the averments in his answer.   At the hear-
ing the exceptions were overruled, and the account ratified.
But as there was no allegation or proof of assets of James
Brawner in the hands of his executor, the appellees were
allowed to amend their petition, for the purpose of having the
estate of Brawner administered in the chancery court.   The
appellant answered accounting for the assets that had come
to his hands, and, also, showing that, under the will of his
testator, he had sold certain real estate, and that the sale had
been ratified by the orphans court of Charles county.   But he
denied the jurisdiction of the court to charge him in this form
of proceeding, at the instance of the heirs at law, and con-
tended that the proceeds of sale of the real estate of his tes-
tator, could not be applied to the payment of their claims, as
personal assets in his hands.   An order was passed 8th Feb-
ruary 1850, requiring the appellant to account with the appel-
lees in respect to the personal estate of James Brawner, and
also for the proceeds of sale of his land, and that the credi-
tors of Brawner be notified to file their claims.   In the ac-
count subsequently stated the claims of the appellees, predi-
cated upon the auditor's account of March 1846, were allowed
against the estate of James Brawner; and the executor has
appealed from so much of the order ratifying that account, as
relates to these claims and to claim No. 11.

The case appears to be one of those which courts of equity
are sometimes called upon to decide, where, from irregularity
of proceedings, neglect or remissness of trustees, and lapse

of time, the party who succeeds may gain more than in conscience he ought to demand; which consequence however the court has no power to prevent. There are circumstances tending to prove that the administrator of Maddox paid some of his debts, after he had passed an account in the orphans court showing that he had overpaid the estate; and there is evidence, also, that the trustee paid a large balance due on a debt of the deceased, under a mistaken view of his authority as trustee. For these payments the appellant claims an allowance out of the proceeds of sale. And it is contended, on his part, that under all the circumstances of the cause, the purchase money, if received by the trustee, should be considered as having been properly disbursed by him, and that the defence relied upon by the heirs at law, should not be favorably regarded by the court. With the propriety of this defence courts have very little concern; it rests with the party interposing the plea. In such cases if the plea be sustained the law must have its course, and the loss, if any, fall on those whose duty it was to have obviated the difficulty by a prompt and faithful discharge of official trust. It is unnecessary, therefore, to examine the evidence on which these allowances are claimed, because as they are resisted by the plea of limitations and were barred at the time when the claims were filed, they were properly rejected by the court below.

The decree contained no direction to the trustee to bring the proceeds of sale into court. It "appointed him trustee for carrying the decree into effect." But we do not think, as contended by the appellant's counsel, that this can be construed into an authority to disburse the trust funds. Trustees sometimes pay away the proceeds of sale, without bringing the money into court, after an audit has been made and ratified, but certainly they have no such power before the fund has been distributed by such account and ratification. *Mackubin vs. Brown*, 1 *Bland*, 410. If they do pay, it must be at their own risk, and they can be in no better condition than the creditors whom they may have paid. The case before us illustrates that no such power should be recognized.

If Brawner had not paid these claims, and his creditors had filed the vouchers in court claiming payment out of the real estate, the heirs at law or other creditors might possibly have shown that the alleged claims had been paid, or were otherwise liable to be excluded from the distribution.   The trustee and administrator, by paying them and retaining the vouchers for so many years, have denied this opportunity to those interested in the estate.   Such payments only entitle the party to be subrogated to the rights of the original creditor.   If, in consequence of the terms of the decree, he felt any embarrassment as to his course, he should, as a faithful agent, bound to carry out the design of the trust, have sought the aid and direction of the court.   *Comegys vs. State, use of Dyckes,* 10 *Gill and Johns.,* 186.

There is, to be sure, no direct proof that the trustee received the proceeds of sale, but we think that there cannot be a reasonable doubt on this point.   At any rate, under the circumstances of this case he must be presumed to have collected the money, or to have lost it to the estate by his neglect.   It is to be remarked, that the trustee did not, nor did the appellant, deny that it was received.   The effort on the part of the trustee and his executor has been to show, not that he did not receive the money and why he could not have done so, but that it had been properly disbursed in paying off Maddox's debts.   In his report he states, that the purchaser had given bond with sureties, according to the terms of the decree.   If the parties had become insolvent or for any cause the purchase money could not have been collected, he should have shown it.   As it was his duty to have collected the proceeds of sale or shown why he did not, he must be dealt with as if it had come to his hands.   1 *Bland,* 416.

The case of *Reigart and Stevenson, vs. Stevenson,* in this court, not reported, is relied upon to show that the court below had no jurisdiction in this case.   There was no opinion filed—nothing to show whether the court meant to apply that decision beyond the case before them, which we suppose

was not intended. The cases, however, are materially different. In the one before us we do not perceive any available remedy at law that the heirs could have resorted to. Suits on the trustee's bond could not have been maintained until after an audit, confirmation, notice and demand of the trustee. *Oyster vs. Annan,* 1 *G. & J.,* 450. *Scott vs. Ducker,* 2 *Md. Rep.,* 284. The same reasons would apply to an action of assumpsit against the trustee for money had and received. The effect would have been to have had an investigation of the trust estate of Isaac Maddox in a suit at law when there was already a case in equity pending for that very purpose. The practice of calling upon trustees and their representatives to account for the trust funds is of long standing in this State. We are not aware of any case in which relief has been refused merely on the ground that the application for an account was filed in the cause in which the original decree was passed. 1 *Bland,* 410. 3 *Bland,* 284. It is eminently proper that it should be so. The most summary and economical mode should be pursued. Why have an original bill? The fund belongs to the case in which the decree passed; the heirs at law and the trustee are in court, and the creditors, if not already in, may come in under the decree, and all matters in dispute may be considered and finally disposed of with less expense and delay than by a new bill. The effect of the proceeding has been, as suggested by the appellant's counsel, to distribute the estate of James Brawner in a case not originally instituted for that purpose. But how could it have been otherwise without injustice to his executor and other creditors? The right of the heirs at law of Maddox to have their proportions of his estate ascertained in this case cannot be questioned. But the payment must have depended on the sufficiency of James Brawner's estate, unless the court below had directed satisfaction to be made by his executor, which would have been manifestly unjust, because in a suit on his testamentary bond, that order would, we apprehend, have the same conclusive effect against him as a judgment at law against him would

67    v.4

have had.   *Iglehart vs. Mackubin,* 2 *G. & J.,* 235.   To
avoid this result, it was necessary to call in Brawner's cred-
itors and have his estate marshalled before any final determi-
nation of the rights of the appellees.   We do not say that an
original bill could not have been maintained, but we think it
was unnecessary in the case before us.   In the case of *Balt-
zell vs. Foss,* 1 *H. & G.,* 504, land was sold for partition.   A
creditor of one of the heirs was allowed to come in by peti-
tion as against his share of the proceeds, on the allegation
that he left no personal estate to pay his debts.   The court
said it could not be questioned at that day, but that creditors
might, by way of petition, instead of pursuing the accustomed
course of an original bill, affect funds situated as in that case.
Yet unless the petitioners were the only creditors of the party,
they could not have the entire fund applied to their claim.
Such a course would be doing injustice to other creditors, if
such existed; but they could be permitted, as on original bill
by a single creditor, to come in for their distributive share.

The *third, fourth* and *fifth* points of the appellant relate to
the will of James Brawner and the effect of the act of 1831,
ch. 315.   It cannot be denied, that his creditors were enti-
tled to have his land sold for payment of debts, if, as is appa-
rent from the record, the personal estate was inadequate for
that purpose, even if his will had contained no authority to
the appellant to sell the realty.   The will does create a trust,
but it at the same time authorizes the executor to sell the
land as he may deem best for the benefit of those interested
in the estate.   It is quite consistent with the intention of the
testator, that the appellant, as executor, should sell the land
under the act of 1831, and after closing the estate hold the
balance for the trusts of the will.   The *tenth* and *eleventh*
sections of the act, we think, authorised this sale.   It ap-
plies to all cases where executors are authorized and directed
to sell real estates.   Its object was to save the expense and
delay incident to chancery proceedings.   The proceeds of
such sales are to be accounted for in the orphans courts in
the same manner as the sales of personal estates, and the

testamentary bond is made answerable as fully as for the personal assets of the deceased. To deny its application to a case like the present would be to defeat the manifest intent of the act. Besides, the appellant himself appears to have entertained this view of his authority under the will. The record shows that he made the sale as executor, and that it was so reported to, and ratified by, the orphans court. . In a case of doubtful construction, we should not willingly listen to an argument, the effect of which might be to shake the title of the purchasers acquired in the manner we have stated.

The widow is to be considered as a purchaser for value, and entitled to an investment for life. But of what? Surely not of the whole proceeds of the real estate to the prejudice of creditors, but only of so much as might remain after the settlement of the estate. It does not appear that she renounced the will. If, standing by the will, she has permitted the land to be sold by the executor, we do not perceive that she has any cause of complaint if she obtains all that the testator could rightfully devise to her. And if she claim as widow and not as devisee, the auditor's report shows that the balance in the executor's hands, after paying debts, is more than she would be entitled to in lieu of dower, and consequently she is not injured by the decree.

Whether the widow, heirs and devisees should have been made parties depends on the character of the proceeds of sale —whether realty or personalty. If the sale was rightfully made, as we suppose it was, according to the act of Assembly, the executor represented all parties in interest as fully as he would in any case involving the personal estate of a deceased person.

For the reasons assigned, we thing that claims Nos. 1, 2, 3, 4, 5, 6, 7, were properly allowed. But we do not take this view of claim No. 11. The court below treats this as having been fully established by the adduction of a judgment against the appellant, as executor. If this were the fact we should, without hesitation, agree in allowing the claim. But we find no such evidence in the record, except a copy of the

docket entries of a case between the claimant and the appellant, referred to the register of wills, upon which there does not appear to have been any award or judgment. The cause appears to have been very irregularly conducted from the beginning almost to the end; and the record exhibits numerous defects which may account for this apparent error of the court below. As the cause will be remanded that the assets may be brought into court, as required by the order from which the appeal is taken, and that the suspended claims may be disposed of, claim No. 11 can be settled according to the actual condition of the proof,

*Cause remanded.*