. (Decided 22nd March, 1882.)

---

JOHN W. KEPLINGER *vs.* THOMAS C. MACCUBBIN.

*Construction of a will—Trust—Executor and Trustee—Power of Sale of Real Estate given to Executors where one had Declined to act and the other had Died before the time for making the sale, arrived—Art.* 16, *sec.* 66, *of the Code, (Act of* 1785, *ch.* 72, *sec.* 4,) *as affected by the Act of* 1865, *ch.* 162, *sec.* 1.—*Orphans' Courts and Courts of Equity—Concurrent jurisdiction.*

W. E. died in the year 1828, and by his will he first gave to his two daughters, Mary and Elizabeth, during their natural lives the "sole use and benefit" of all his property "real, personal and mixed, each an equal share," and in case of the death of Elizabeth "without lawful issue, her portion or share shall pass over and belong" to Mary. The next two items of the will are as follows:

1st. "Upon the *decease of both of my daughters,* Mary and Elizabeth, it is my will and desire that the property hereby bequeathed to them for their use and benefit, shall be equally divided among the lawful issue of my son J. E. lately deceased, and the lawful issue of my two daughters, Mary and Elizabeth aforesaid, or the survivor of their issue; but in case the property hereby bequeathed cannot be equally divided, then and in that case I hereby direct my *executors* hereinafter named *to sell* the same, and distribute the proceeds thereof, share and share alike, among the lawful issue of my above named son and daughters, and the survivors of them, the said issue.

Keplinger *vs.* Maccubbin.

2nd. "I hereby nominate, constitute and appoint J. C. and L. W. of the city of B. *trustees*, to take charge of the share or portion hereby bequeathed to my daughter Elizabeth for her use, and to manage the same, and to act for her in that capacity, on all occasions as circumstances may require, *during her natural life;* giving her the full and sole use and benefit thereof; and in case the above named J. C. and L. W. should remove away or die, then and in that case, it is my will and desire, that they, the said J. C. and L. W. shall appoint two discreet persons to act as *trustees* for my heirs aforesaid." The testator then appointed J. C. and L. W. his executors. HELD :

1st. That the intention of the testator that the same parties should act in the two distinct capacities of *trustees* for his daughter Elizabeth during her life, and as *executors* of his will, was too plainly expressed to admit of doubt.

2nd. That it was equally clear that the power of sale and distribution at the appointed time and·upon the prescribed contingency, was conferred upon them in their capacity as executors.

3rd. That the fact of the same parties being both trustees and executors could not enlarge their powers in either capacity, nor could it work any transfer or interchange of such powers.

4th. That the trust was created for the benefit of Elizabeth alone, and necessarily ceased upon her death.

5th. That it did not affect the case, that the executors were authorized to exercise the power to sell at a period long subsequent to that in which they were required by law to discharge their ordinary duties of collecting assets, and paying debts and legacies.

6th. That the will was to be construed as if these respective offices and duties had been conferred upon different individuals.

J. C. renounced the trusts, and L. W. died after he had administered the personal estate and settled his final account in the Orphans' Court. The testator's daughter Mary married and died, in October 1858, leaving children, whereby an intestacy arose as to one-half of the estate during the life of Elizabeth, no provision having been made in the will for the contingency of Mary dying first. Upon an *ex parte* proceeding in equity instituted by the heirs of the testator, an order was passed in November 1858, appointing J. W. K. "*trustee* in the place of L. W. deceased, the surviving *trustee* named in the last will of W. E., with all the power and authority

Keplinger *vs.* Maccubbin.

of the original *trustee,* but subject to the future order of this Court in relation to said trust," and requiring him to give bond. HELD :

1st. That this could not be regarded as an order passed in pursuance of the power conferred by the Act of 1785, ch. 72, sec. 4, "appointing a trustee *for the purpose of selling and conveying* the property" directed by the will to be sold.

2nd. That the Court in the exercise of its ordinary jurisdiction had the unquestioned power to fill the vacancy in the trusteeship upon the application of any party interested.

3rd. That the power of sale contained in the will was not vested in J. W. K. by force of this order.

J. W. K. acted as trustee until February, 1861, when he was removed and T. C. M. was appointed trustee in his place and required to give a like bond. HELD :

1st. That by this order T. C. M. was clothed with no other or greater powers than had been by the previous order granted to J. W. K.

2nd. That the fact of each of these trustees also acted as trustees for the heirs as prayed in their petition, and collected for their benefit after the death of Mary the rents of that part of the estate which was devised to her for life, could not enlarge the terms and effect of the orders themselves, nor increase to any extent the lawful authority thereby conferred.

T. C. M. continued to act until the death of Elizabeth in July, 1880, when J. W. K., who was a party in interest, applied for and obtained from the Orphans' Court letters of administration, *d. b. n. c. t. a.* upon the estate of the testator. The Act of 1865, ch. 162, added several sections to Art. 93, of the Code; by the first of which it is provided that in "all cases in which a testator by will has directed his or her real estate to be sold for payment of debts, *or for any other purpose,* and the executor or executors therein named shall refuse, or *decline* to act, or *shall die* without executing the powers vested in him or them, it shall and may be lawful for the several Orphans' Courts of this State, upon petition of any party interested, to appoint an administrator *de bonis non* with the will annexed, or to empower the administrator with the will annexed previously appointed, *to execute the trusts of said will,* in the same manner and to the same extent as the executor or executors appointed by will could or might do." HELD :

1st. That upon the death of Elizabeth it became the duty of the executors to execute the power of sale in case the estate could not be equally divided among the parties then entitled.

Keplinger vs. Maccubbin.

2nd. That there being no executors then in existence, if no legislation had intervened, or if nothing had been done thereunder, it would have been competent for a Court of equity to have acted under sec. 66, of Art. 16, by which sec. 4, of the Act of 1785, ch. 72, is codified, and to have appointed a trustee to sell and convey the property.

3rd. But that the subsequent Act of 1865, ch. 162, sec. 1, fully met and covered a case like the present, where one of the executors had declined to act, and the other had died before the time at which the power could be exercised had arrived.

4th. That by virtue of his said appointment by the Orphans' Court, and by force of the statute, J. W. K. was vested with the power of sale and could have exercised it under the direction of the Orphans' Court, as provided by sec. 280, Art. 93, of the Code, as modified by the Act of 1865, ch. 51. Or as a better and safer course he might have filed a bill asking to be allowed to administer the estate and execute the power of sale under the direction and protection of a Court of equity.

5th. That the Legislature in granting jurisdiction in such cases to the Orphans' Courts has not made it exclusive, but has expressly reserved the jurisdiction in equity.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before STONE, GRASON, MILLER, ALVEY, ROBINSON, IRVING and RITCHIE, J.

*John H. Handy*, for the appellant.

*A. R. White*, and *Fred'k J. Brown*, for the appellee.

MILLER, J., delivered the opinion of the Court.

This appeal is from the refusal of the Circuit Court to rescind its order of the 21st of October, 1880, authorizing and directing Thomas C. Maccubbin, to execute the power of sale contained in the will of Wolfgang Etch-

berger.   The important, and practical question in the case is whether, under a sale made by Maccubbin in pursuance of this order, the purchaser would take a good title; and this depends mainly upon the construction and effect of the will, and the order of the equity Court of November, 1858.

Etchberger died in May, 1828, and, by his will he first gave to his two daughters, Mary and Elizabeth, during their natural lives, the "sole use and benefit" of all his property, "real, personal and mixed, each an equal share," but provided, that "in no case shall the property or the revenues arising therefrom be subjected to the sale or control of their husbands" in case they should marry, and in case of the death of Elizabeth "without lawful issue, her portion or share shall pass over and belong" to Mary.   The next two items of the will are as follows:

1st.  "Upon the *decease of both my daughters*, Mary and Elizabeth, it is my will and desire that the property hereby bequeathed to them for their use and benefit, shall be equally divided among the lawful issue of my son, John Etchberger, lately deceased, and the lawful issue of my two daughters, Mary and Elizabeth aforesaid, or the survivor of their issue, but in case the property thereby bequeathed, cannot be equally divided, then and in that case I hereby direct my *executors* hereinafter named, *to sell* the same, and distribute the proceeds thereof, share and share alike, among the lawful issue of my above named son and daughters or the survivors of them, the said issue."

2nd.  "I hereby nominate, constitute and appoint James Clark and Labon Welch, of the City of Baltimore, *trustees*, to take charge of the share or portion hereby bequeathed to my daughter Elizabeth, for her use, and to manage the same, and to act for her in that capacity, on all occasions as circumstances may require, *during her natural life*, giving her the full and sole use and benefit thereof, and

in case the above named James Clark and Labon Welch should remove away or die, then and in that case, it is my will and desire that they, the said James Clark and Labon Welch shall appoint two discreet persons to act as *trustees* for my heirs aforesaid."

The testator then appointed Clark and Welch his executors; and his intention that these same parties should act in the two distinct capacities of *trustees* for his daughter Elizabeth during her life, and as *executors* of his will, seems to us to be too plainly expressed to admit of doubt. And, in our opinion, it is equally clear that the power of sale and distribution, at the appointed time and upon the prescribed contingency, is conferred upon them in their capacity as executors. The will so says, and we find nothing in its provisions to control the plain meaning of the express direction that "my *executors* hereinafter named" shall sell the property and distribute the proceeds thereof. True the same parties are both trustees and executors, but this cannot enlarge their powers in either capacity nor can it work any transfer or interchange of such powers. By the terms of the will the duration of their office as trustees is limited to the life of Elizabeth. The trust was created for her benefit alone, and necessarily ceased upon her death, an event which might have occurred half a century before their power to sell as executors could be exercised. Nothing is more common than for testators to create trusts and make their executors trustees. The books are full of cases in which such provisions are found in wills, and the Courts have uniformly treated the two capacities as distinct though conferred upon the same individuals. Nor does it affect the case that the executors were authorized to exercise this power at a period long subsequent to that in which they were required by law to discharge their ordinary duties of collecting assets and paying debts and legacies; for it is perfectly competent for a testator to empower his

executors to sell his property and distribute the proceeds
after the expiration of a life estate therein.    In short we
hold that this will is to be construed precisely as if these
respective offices and duties had been conferred upon
different individuals.    Now let us suppose this had been
done, and that the different parties, trustees and execu-
tors were now living, can there be a doubt that the latter
would have the right and be bound to exercise the power
of sale?    In that case, the question, as between the living
executors and the living trustees, or the successors in office
of the latter, as to where and in whom the power of sale
was vested, would, in our judgment, be too plain for
argument.    We are therefore clearly of opinion the power
of sale was by this will, vested in the *executors* as such,
and that being so, we must next inquire whether any-
thing has occurred by which Mr. Maccubbin has been
lawfully authorized to execute this power.

It appears that Clark renounced the trusts, and that
Welch died after he had administered the personal estate
and settled his final account thereof in the Orphans'
Court.    The daughter Mary, married, and died in Octo-
ber, 1858, leaving several children.    Upon her death,
there arose an intestacy as to one-half of the estate dur-
ing the life of Elizabeth, the will not having provided for
the contingency of Mary's dying first.    In this state of
case, the parties who were then the heirs-at-law of the
testator, in November, 1858, filed an *ex parte* petition in
the Circuit Court exhibiting the will, setting forth the
above facts as to the renunciation of Clark, and the deaths
of Welch and Mary, and praying the Court to appoint a
*trustee to take charge of that part of the estate devised to
Elizabeth*, and also to collect the rents of the other part,
and account for the same to the petitioners as heirs-at-law.
The Court (KREBS, J.,) thereupon, on the 29th of Novem-
ber, 1858, passed an order appointing John W. Keplinger,
"*trustee*, in the place of Labon Welch, deceased, the sur-

viving *trustee* named in the last will of Wolfgang Etch-
berger, with all the power and authority of the original
*trustee,* but subject to the future order of this Court in
relation to said trust," and requiring him to give bond in
the penalty of $2000.

What then is the character and effect of this order?
Upon its face, it deals simply with the office of *trustee*
under the will, which had then become vacant. We do
not regard it as an order passed in pursuance of the
power conferred by the Act of 1785, ch. 72, sec. 4, "ap-
pointing a trustee *for the purpose of selling and convey-
ing* the property" directed by the will to be sold. The
Court makes no reference to that law as the source of
authority for the order, nor does the petition ask for the
appointment of a trustee for the purpose of effecting a
sale. In truth, the time for sale had not then arrived,
and did not in fact arrive for more than twenty years
thereafter. There was, therefore, no necessity at that time
for invoking an exercise of the special power granted by
this Act of Assembly. There was, however, a vacancy
in the trusteeship of a subsisting, continuing and active
trust. There was also a pressing necessity for filling that
vacancy, and a Court of equity, in the exercise of its
ordinary jurisdiction, had the unquestioned power to fill
it, upon the application of any party interested. The fill-
ing of that vacancy is what the petition asked for, and
what the order on its face professed to accomplish. To
give it a broader scope, or to attribute to it the effect of
an order under the Act of 1785, would be doing violence
to its terms, as well as to the intention of the petitioners
as manifested by the averments and prayer of their peti-
tion. Confined to this object, it was such an order as the
petition prayed for, and such as a Court of equity had
jurisdiction to pass without the aid of any statutory
power. We are, therefore, of opinion, that the power of
sale contained in the will was not vested in Keplinger by
force of this order.

Keplinger acted as trustee until February, 1861, when, by an order passed upon petition of the other parties, and also upon his own application, he was removed, and Thomas C. Maccubbin was appointed "*trustee*" in his place, and required to give a like bond. It is plain that by this order, Maccubbin was clothed with no other or greater powers than had been, by the previous order, granted to Keplinger. It is true, that each of these trustees also acted as trustee for the heirs, as prayed in their petition, and, after her death, collected for their benefit, the rents of that part of the estate which was devised to Mary for life, but the fact that they so acted, could not enlarge the terms and effect of the orders themselves, nor increase to any extent the lawful authority thereby conferred.

Maccubbin continued to act until the death of Elizabeth in July, 1880. Upon her death, the *trust* created by the will, and which had continued for fifty-two years ceased, and it then became the duty of the *executors* to execute the power of sale, in case the estate could not be equally divided among the parties then entitled. But there were no executors then in existence, and if no legislation had intervened, or if nothing had been done thereunder, it would have been competent for a Court of equity to have acted under sec. 66, Art. 16, of the Code, by which sec. 4, of the Act of 1785, ch. 72, is codified, and to have appointed a trustee to sell and convey the property. But, subsequent to the death of this testator in 1828, among other laws bearing upon the subject, the Act of 1865, ch. 162, was passed. By that Act, several sections were *added* to Art. 93, of the Code, which contains the testamentary law of the State; and by the first of these additional sections it was provided, that in "all cases in which a testator, by will, has directed his or her real estate to be sold for payment of debts, *or for any other purpose*, and the executor or executors therein named

shall refuse or *decline* to Act, or *shall die* without execut-
ing the powers vested in him or them, it shall and may
be lawful for the several Orphans' Courts of this State,
upon petition of any party interested, to appoint an ad-
ministrator *de bonis non,* with the will annexed, or to
empower the administrator with the will annexed previ-
ously appointed, *to execute the trusts of said will* in the
same manner, and to the same extent as the executor or
executors appointed by will could or might do." This
law fully meets and covers a case like the present, where
one of the executors has declined to act, and the other
has died before the time at which the power could be
exercised, had arrived. Then, on the 5th of August, 1880,
Keplinger, who was a party in interest, and also the oldest
male descendent of Etchberger, the testator, applied for
and obtained from the Orphans' Court of Baltimore City,
letters of administration *d. b. n. c. t. a.* upon his estate,
and we are of opinion, that by virtue of this appointment
and by force of this statute, he was vested with the
power of sale, and could have exercised it under the
direction and supervision of the Orphans' Court, as pro-
vided by sec. 280, Art. 93, of the Code, as modified by
the Act. of 1865, ch. 51. But, instead of doing this, he
has adopted what, under the circumstances of the case,
appears to us to be a better and safer course. He has, as
such administrator, and also in his own right as devisee
under the will, filed an original bill, to which all persons
in interest are, or can be made parties. In this bill he
prays, for reasons therein stated, that he may be allowed
to administer the estate and execute the power of sale,
under the direction and protection of a Court of equity.

We entertain no doubt as to the jurisdiction in equity
under such a bill. In the case of *Eichelberger's Ex'rs vs.
Hawthorne,* 33 *Md.,* 588, the executors were empowered
to sell the testator's real estate after the death of his wife,
to whom he gave a life estate therein, and, acting under

the jurisdiction given to the Orphans' Court, they made the sale and reported the same to that Court for ratification, but it was held by this Court that they "could, if they had chosen, have invoked the aid of a Court of equity, and administered their trust under its supervisory power." · In fact, the Legislature in granting jurisdiction in such cases to the Orphans' Courts, has not made it *exclusive*, but has expressly reserved the jurisdiction in equity. Sec. 280, of Art. 93, which embraces the jurisdiction conferred upon the Orphans' Courts in cases of sales of real estate by executors, is derived from secs. 10 and 11, of the Act of 1831, ch. 315, and by another section of the same law it is enacted "that nothing *in this Act contained*, shall be construed to affect the general superintending power exercised by the Court of chancery with respect to trusts." And this latter provision as embodied in the Code, (Art. 16, sec. 68,) reads thus: "Nothing in the testamentary law of this State shall be construed in any manner to affect the general superintending power of the Courts having chancery jurisdiction with respect to trusts." It seems therefore to have been the design of the Legislature in conferring this jurisdiction upon the Orphans' Courts, to save, in ordinary cases, the expense and delay incident to chancery proceedings, but not to *take away* jurisdiction in equity where parties choose to invoke it. *Dent vs. Maddox*, 4 *Md.*, 530; *Davis vs. Clabaugh*, 30 *Md.*, 508. As we have said, there are circumstances surrounding this case, and stated in this bill, which make it eminently proper for a Court of equity to intervene, and see that the property is so placed in the market as to insure to the purchaser a good title, and thereby make it sell for the best possible price. Under this bill a sale can be ordered and effected free of any cloud upon the title, and unimpaired by any doubt as to the complainant's right to make it; and we are clearly of opinion that the sale can now be made in no other way and by no other

party, unless the complainant may choose to waive his right and ask for the appointment of another party as trustee to sell.

This bill was filed on the 5th of August, 1880, and, Maccubbin, before answering it, filed a petition in the *ex parte* trust proceedings praying for an order directing him to sell the property, and an order to that effect was passed on the 21st of October, 1880. He then, on the next day, filed his answer to the bill, and in that answer he relies upon this order as giving him the right to sell, and as a reason why the bill should be dismissed. After this, Keplinger filed a petition in the *ex parte* case asking a rescission of this order, but this the Court, by an order passed on the 8th of December, 1880, refused. An appeal has been taken by Keplinger from each of these orders, and it follows from the views above expressed, that they are both erroneous. We shall therefore sign a decree reversing that part of the order of the 8th of December, which dismisses so much of the petition of Keplinger as prays a rescission of the order of the 21st of October, 1880, and reversing and rescinding said last mentioned order. The decree will also direct the costs of this appeal to be paid by the appellee, Maccubbin.

*Orders reversed.*