ROBERT H. SHARPE and MARION S. SHARPE,
His Wife,

*vs.*

CHARLES J. OGLE, Executor.

*Power of Sale in Executor—Time of Exercise—Direction as to Reinvestment.*

A power to sell land, given to one named as the executor, who was also given a life estate in the land, *held* not restricted, as regards the time of its exercise, to the period within which he was required as executor to collect the assets and pay debts and legacies, the will substituting any proceeds of such sale for the land itself, and directing a similar disposition thereof. p. 13

That a will, giving a power of sale to the executor, provided that any proceeds of sale should be reinvested subject to the approval of the orphans' court, did not affect the validity of a sale made under the power, even conceding that that court was without jurisdiction to give such approval, since this could be secured from a court of equity, in spite of a provision in the will that no part of testator's estate should be subject to a court of equity. pp. 14, 15

*Opinion filed February 28th, 1921.*

Appeal from the Orphans' Court of Baltimore City.

The cause was submitted on briefs to Boyd, C. J., Briscoe, Thomas, Pattison, Urner, Stockbridge, Adkins, and Offutt, JJ.

*Ferdinand C. Dugan,* for the appellant.

*Walter I. Wells,* for the appellee.

PATTISON, J., delivered the opinion of the court.

George A. Ogle in the first clause of his will devised a house and lot of land in Danville, Virginia, to his son-in-law, John Leonard Jennings, subject to the conditions, qualifications and charges therein mentioned, and after referring to the policy of insurance upon his life, and stating for whose use and benefit it was intended, he, in the second clause of his will, disposed of certain houses and lots in the City of Baltimore as follows:

> "I give and bequeath unto my son, Charles Joseph Ogle, for the term of his life, with remainder absolutely to his child or children, should he marry and have any that survive him, the house and lot Number 2513 North Charles Street; also the house and lot Number 402 South Sharp Street, both in Baltimore City. At his death without issue surviving him, or if he should die before me, the house and lot Number 2513 North Charles Street is to pass to my niece, Florence I. J. Ogle, for the term of her life, and after that it shall revert to my estate. At the death of my son, Charles, without issue surviving him, or should he die before me, the house and lot Number 402 South Sharp Street is to pass to my niece, Edith Hayden, for the term of her life, and after that it shall revert to my estate. But if it be deemed best, *my executor or executors are authorized to sell either or both of the above named houses and lots,* Nos. 2513 and 402, provided *the sums received therefrom be kept apart and safely invested* and the income from them to go to my son, Charles, during his life, and in the event of his death without surviving issue to go to my nieces, Florence and Edith, in the manner aforesaid during their respective lives, and after that the principal sums to revert to my estate, *the aforesaid investments to be subject to the approval of the Orphans' Court of Baltimore City.*"

Then followed certain legacies bequeathed to those named in the will, after which is found the following provision:

"All other property of mine, real, personal, and mixed, not hereinbefore mentioned, I bequeath unto my son, Charles Joseph Ogle, to hold, use for himself, sell or dispose of by his will or otherwise, the whole or any part of the same except that should he die without issue surviving him and leave no will, or should he die before me, leaving no issue, then any part of my estate that shall at that time remain, together with the houses and lots No. 2513 North Charles Street and No. 402 South Sharp Street, when they shall have reverted to my estate shall be subject to this my will, and shall be disposed of as hereinafter set forth."

The testator then disposed of the above-mentioned residue of his property in the event of its reverting to his estate because of the happening of the contingencies above stated, and lastly he named Charles Joseph Ogle his executor, with the provision that, should he not be living at the time of the testator's death, or, if living at that time, unable to act as such executor, others were therein named to act in that capacity. The will then concludes with the following provision,

"And (I) authorize them (his executors) to sell all or any of my estate, either personal property or real estate, and should it be necessary to appoint trustees for any part of my estate, I hereby appoint my said executors to be such trustees, and it is my will that no part of my estate be subject to any court of equity," etc.

It is shown by the agreed statement of facts filed in this case that George A. Ogle died in the month of August, 1907, and that letters testamentary were issued to his son, Charles Joseph Ogle, who had fully administered upon the estate, and had entered into and was in possession of said house and lot of ground No. 2513 North Charles Street when the sale thereof was made by the executor to the appellants in this case; which sale was finally ratified by the Orphans' Court, and it is from the order of that court overruling the exceptions thereto and ratifying said sale that this appeal is taken.

The exceptions filed to the ratification of the sale are as follows:

> "First—That as Charles Joseph Ogle at the time of the sale of the said house and lot of ground had fully administered upon the personal estate of the testator, by a distribution of the same, and as life tenant had entered into and was in possession of said house and lot, his duties and powers, as executor, had ceased, and he thereafter could not sell said property under the power conferred upon him by the will.
>
> "Second—That as the proceeds of the sale of the said house and lot, under the will, are to be invested by the executor subject to the approval of the orphans' court, a sale made under the power was invalid, because, as claimed, the orphans' court is without the requisite statutory authority to approve of said investment."

As the court said in the case of *Keplinger* v. *Maccubbin,* 58 Md. 208, it does not "affect the case that the executors were authorized to exercise this power (the power of sale) at a period long subsequent to that in which they were required by law to discharge their ordinary duties of collecting assets and paying debts and legacies, for it is perfectly competent for a testator to empower his executor to sell his property and distribute the proceeds after the expiration of a life estate therein."

Whether the power to sell in such cases extends beyond the period that the executors are to perform the ordinary legal duties of executors in settling the personal estate is to be determined by the intention of the testator, from the language of the will.

In the case before us the executor was authorized, if he deemed it best, to sell said house and lot, No. 2513 North Charles Street, in which he took a life estate under the will; and if he sold the property under said power, the proceeds were to be invested and the income was to be received by him,

as such life tenant, so long as he lived, and upon his death, without issue, the income therefrom was to go to testator's niece, Florence I. J. Ogle, for life, and upon her death it was to revert to the estate of the testator.

It will thus be seen that the proceeds of sale were to be substituted for the house and lot, and were to be treated and disposed of in the same manner as the house and lot, if not sold. In the event of a sale the proceeds were not to go into the general assets of the estate to be distributed as other assets, and consequently any delay in the sale of said property would in no way affect an early settlement of the personal estate. But the proceeds were to be invested by the executor, the life tenant, the income to go to him so long as he lived, the income and proceeds then to be disposed of in the manner stated above. With such disposition of the proceeds, we discover no reason why a restricted construction should be placed upon the language used by the testator, limiting the right of the executor to sell said property to the period in which he was required to settle the estate by the collection of the assets and the payment of the debts and legacies. There is nothing found in the will to indicate that it was the intention of the testator that the language used by him should be given such a construction. It might have been very essential for the good of those who were ultimately to enjoy the bounty of the testator in respect to said house and lot, as well as the life tenant, that the property should be sold at a time subsequent to the settlement of the personal estate, and it was not, we think, the intention of the testator to limit the time in which the executor was to exercise such power to the period mentioned above, when, in fact, the necessity for the sale may not have arisen until after the expiration of such time.

As to the second objection urged against the validity of the sale, there can, we think, be no difficulty. The executor, as we have said, was authorized and empowered to make the sale at the time he made it, and the claim made by the appellants, if correct, which we need not pass upon in deciding the ques-

tion before us, could not affect the validity of the sale, for, should it be held necessary to go into a court of equity and there have the investment approved of by that court, such could be done, notwithstanding the statement of the testator that it was his will that no part of his estae should be subject to a court of equity, as no effect can be given to such direction, if, in order to carry out the provisions of the will as to the disposition of the property, it is found necessary to invoke the jurisdiction of a court of equity; and, in this connection, it will be observed that the testator in his will named his executors as trustees should it be found necessary to appoint trustees for any part of his estate.

It was for the reasons herein stated that the order overruling the exceptions thereto and ratifying the sale of said property, was affirmed by the *per curiam* opinion heretofore filed.

*Order affirmed, costs to be paid by the appellants.*